IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| MICHAEL D. CROWLEY,<br><br>                    Plaintiff,<br><br>vs.<br><br>KILOLO KIJAKAZI, Acting<br>Commissioner of Social Security,<br><br>                    Defendant. | CV 20-133-BLG-TJC<br><br>**ORDER** |

Plaintiff Michael D. Crowley ("Crowley") filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") regarding the denial of claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  (Doc. 1.)  The Commissioner subsequently filed the Administrative Record ("A.R.").  (Doc. 13.)

Presently before the Court is Crowley's motion for summary judgment, seeking reversal of the Commissioner's denial and remand for an award of disability benefits, or alternatively for further administrative proceedings.  (Doc. 15.)  The motion is fully briefed and ripe for the Court's review.  (Docs. 15, 17, 18.)

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court hereby finds the case should be **REMANDED** for further administrative proceedings.

## I.    Procedural Background

Crowley completed his application for DIB on July 16, 2015, alleging disability for diabetes, cerebral palsy, legal blindness, depression, high blood pressure, neuropathy, and problems walking and standing.  (A.R. 88-90.) Crowley's initial determination was "not disabled," and his claim was denied on May 18, 2016.  (A.R. 115-18.)  Crowley requested reconsideration and his denial was affirmed on July 20, 2017.  (A.R. 120-26.)

Crowley subsequently requested a hearing, which was held July 11, 2019, in Billings, Montana, before Administrative Law Judge Michele M. Kelley (the "ALJ").  (A.R. 37, 39, 127-28.)  On August 28, 2019, the ALJ issued a written decision finding Crowley not disabled.  (A.R. 17-31.)  Crowley requested review of the decision by the Appeals Council.  (A.R. 193-98.)  On June 30, 2020, the Council denied Crowley's request for review.  (A.R. 1-3.)  Thereafter, Crowley filed the instant action.

/ / /

/ / /

/ / /

## II.     Legal Standards

### A.     Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited.  The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).  *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is not supported by substantial evidence."); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten*, 44 F.3d at 1457.  In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).  The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational

interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."). But even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

**B.     Determination of Disability**

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) he suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work he previously performed, or any other substantial gainful employment which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). A claimant must meet both requirements to be classified as disabled. *Id*.

The Commissioner makes the assessment of disability through a five-step sequential evaluation process. If an applicant is found to be "disabled" or "not

disabled" at any step, there is no need to proceed further. *Ukolov v. Barnhart*, 420

F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec.*

*Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)).  The five steps are:

1. Is claimant presently working in a substantially gainful activity?  If so, then the claimant is not disabled within the meaning of the Social Security Act.  If not, proceed to step two.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe?  If so, proceed to step three.  If not, then the claimant is not disabled.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1?  If so, then the claimant is disabled.  If not, proceed to step four.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is not disabled.  If not, proceed to step five.  *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work?  If so, then the claimant is not disabled.  If not, then the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

## III.   Factual Background

### A.     The Hearing

Crowley's hearing was held before the ALJ in Billings, Montana, on July 11,

2019.  (A.R. 37, 39.)  It was noted at the outset of the hearing that Crowley's

primary issues are related to the use of his hands due to cerebral palsy and right

shoulder surgery affecting the right hand, diabetes, neuropathy in his feet, degenerative disc disease in his cervical and lumbar spine, and a history of myocardial infarction and stroke.  (A.R. 45.)

It was also noted that Crowley had obtained self-employed earnings from a business jointly owned with his wife.  (A.R. 40-43.)  Crowley explained that their business entailed purchasing storage units and selling abandoned items online or at garage sales.  (A.R. 46-47, 49.)  He stated that due to his medical conditions, his ability to help in the business has become limited, and he now predominantly only posts items online for sale.  (A.R. 46-47.)  Crowley testified that he can only move "little boxes and stuff like that" and that his wife does "85 to 90% of the work." (A.R. 47.)  He testified that he can only lift five to ten pounds.  (A.R. 75.)  Crowley explained that on one occasion after his heart attack he had to go to the hospital after he "tried to move a couple of end tables."  (A.R. 50.)  He estimated that he spends about ten hours in a week on tasks related to their business.  (A.R. 47-48.)

Regarding his back, Crowley testified to pain in his lumbar spine that "feels like somebody's stabbing you right in the back with a knife" with pain radiating down both legs.  (A.R. 52.)  He testified he can walk and stand for twenty to thirty minutes before he needs to stop and sit down.  (A.R. 52-54.)  He also stated that he has issues with balance.  (A.R. 54-55.)  As for sitting, he provided that he can sit in a recliner with his legs elevated for thirty to forty-five minutes before the pain in

his back requires him to lay down. (A.R. 55.) He stated that he spends most of his day alternating between sitting, standing, and laying down, and that he does not see friends as often due to his pain. (A.R. 56.)

Crowley also testified to increased problems with his hands. (A.R. 61.) Crowley's left hand is affected by cerebral palsy. (A.R. 63.) He testified that problems with his right shoulder and neck have also caused problems in his right hand. (A.R. 64-65.) He testified that, at times, he cannot grip to open a bag of chips, and he has difficulty gripping a steering wheel. (A.R. 61.) This also prohibits him from holding a phone to his ear for more than a few minutes, doing dishes, writing, buttoning his pants, and tying his shoes. (A.R. 62-63, 65-67.)

Crowley also described vision problems. He testified that his cerebral palsy has affected his right eye, and that he is unable to make out any definition with the right eye. (A.R. 57, 63.) He also described episodes of headaches and blurred vision in both eyes. (A.R. 59.)

At the conclusion of the hearing, the ALJ posed hypotheticals to Karen Black, vocational expert ("VE"). (A.R. 76.) The VE concluded that a hypothetical claimant with similar characteristics as Crowley, including decreased vision in one eye and only occasional use of one upper extremity, could not perform past work "as actually performed," but could perform other unskilled, light work, such as a rental clerk. (A.R. 77-80.)

**B.     The ALJ's Findings**

The ALJ followed the five-step sequential evaluation process in considering

Crowley's claim.  At step one, the ALJ found that Crowley, although self-

employed with his spouse, had not engaged in substantial gainful activity since his

amended onset date of April 1, 2018.  (A.R. 17, 20.)  At step two, the ALJ found

Crowley had the following severe impairments: cerebral palsy, cervical

degenerative disc disease, lumbar degenerative disc disease, right shoulder internal

derangement, status post right shoulder surgery, and coronary artery disease with

stent placement.  (A.R. 20.)  At step three, the ALJ found that Crowley did not

have an impairment or combination of impairments that met or medically equaled

the severity of one of the listed impairments.  (A.R. 21.)

Before considering step four, the ALJ determined Crowley had the residual

functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) as
> follows: The claimant can lift, carry, push and pull 10 pounds frequently and
> 20 pounds occasionally.  He can walk and/or stand for about 6 hours in an 8-
> hour workday.  He can sit for about 6 hours in an 8-hour workday.  The
> claimant can occasionally handle, finger and feel with the left upper
> extremity, but can frequently handle and finger with the right upper
> extremity.  The claimant has light perception limitations of the right eye with
> vision limitations for near, fine or far detail.  The claimant can understand,
> remember and carry out simple, detailed and complex tasks.  He can
> maintain attention, concentration, persistence and pace for such tasks for 8-
> hour workdays and 40-hour workweeks.  The claimant can tolerate
> interaction with supervisors, coworkers and members of the public.  The
> claimant can tolerate usual work situation [sic] and changes in the routine
> work setting.

(A.R. 22.)

At step four, the ALJ found that Crowley was unable to perform any past relevant work.  (A.R. 29.)  Finally, at step five, the ALJ found that based on Crowley's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that he could perform, such as a cleaner/housekeeper, a recreational aid, or a rental clerk.  (A.R. 30.)  Accordingly, the ALJ found Crowley not disabled.  (A.R. 31.)

## IV.    Discussion

The Court addresses the following issues: (1) whether the ALJ properly discounted Crowley's subjective symptom testimony; (2) whether the ALJ improperly discounted the findings and opinions of his treating physician; and (3) whether the ALJ's determination at step five was supported by substantial evidence.[1]  (Doc. 15 at 5.)

### A.    Crowley's Subjective Symptom Testimony

Crowley argues that the ALJ improperly discounted his subjective symptom testimony without providing clear and convincing reasons for rejecting his

---

[1] Crowley's "statement of issues presented for review" is difficult to reconcile with the arguments made in his briefing.  For example, Crowley's second issue asks whether the ALJ failed to consider the frequency and duration of treatment, but in his brief the argument under this section focuses on his subjective symptom testimony.  Accordingly, the Court restates the issues as articulated here.

testimony.  (Doc. 15 at 28.)  The Commissioner counters that the ALJ reasonably evaluated Crowley's testimony.  (Doc. 17 at 13.)

The credibility of a claimant's testimony is analyzed in two steps.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or other symptoms alleged.  *Id.*  Second, if there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if she provides "specific, clear and convincing reasons" for doing so.  *Id.*  "In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'"  *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  *See also Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).  The clear and convincing standard "is not an easy requirement to meet: [it] is the most demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (internal quotation and citation omitted).

To assess a claimant's subjective symptom testimony, the ALJ may consider (1) ordinary credibility techniques, (2) unexplained or inadequately explained failure to seek or follow treatment or to follow a prescribed course of treatment, and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989). An ALJ may also take the lack of objective medical evidence into consideration. *Baston v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

Here, the ALJ determined that Crowley's medically determinable impairments could reasonably be expected to cause his symptoms, and there is no argument that he is malingering. Therefore, the ALJ was required to cite specific, clear, and convincing reasons for rejecting Crowley's subjective testimony about the severity of his symptoms. The Court finds the ALJ failed to do so.

In her decision, the ALJ acknowledged that the overall records regarding Crowley's left upper extremity, spine, right shoulder, and cardiac issues lend "some support" to his limitations. (*See* A.R. 23-27.) Nevertheless, the ALJ found that Crowley's subjective limitations were "not fully supported" by the record and his daily activities. (A.R. 23.)

In making this finding, the ALJ repeatedly cites to a hospital discharge summary by Dr. Grecco, a hospitalist. (*See* A.R. 24-28.) Per Dr. Grecco's record, Crowley had been admitted to the hospital for a night after he presented with chest

11

pain.  (A.R. 716.)  Dr. Grecco stated, "[t]he patient noted that he had been moving furniture for the previous 2 days and had begun to feel somewhat ill when he had a sudden stabbing pain in the midsternal area, resembling his chest pain prior to his previous stent . . . ."  (*Id.*)  The ALJ also points out that Dr. Grecco's physical exam provided for normal range of motion.  (A.R. 717.)  These findings, however, do not provide clear and convincing reasons to discredit Crowley's testimony.

First, Dr. Grecco did not regularly treat Crowley for any of his conditions; there is no indication that he treated Crowley beyond his admittance to the hospital for chest pain.  The ALJ's reliance on this single encounter does not provide a clear and convincing reason to rebut objective medical findings by numerous treating providers who have provided specialized care for his various medical conditions and limitations.

Second, the ALJ seizes on Dr. Grecco's note that Crowley had been "moving furniture for the previous 2 days" to discredit his testimony and objective medical findings regarding his left upper extremity, spine, right shoulder, and cardiac impairments.  (*See, e.g.*, A.R. 24-25, 26 (noting "the claimant's statements to Dr. Grecco do not fully support the claimant's subjective limitations due to a cardiovascular impairment" and "the claimant's activities of daily living, work activity, statements at the hearing and statements to Dr. Grecco do not fully

support the claimant's subjective limitations due to his right shoulder

impairments").)

At the hearing, Crowley was asked about the note and his ability to move

furniture.  (A.R. 50.)  He testified that they were actually having a yard sale, and he

tried to move "a couple [of] end tables," not larger furniture, such as couches or

beds.  (*Id.*)  He said, "I had been outside in the heat and then just—I got hit like a

ton of bricks and had to go to the hospital."  (*Id.*)  He explained that his ability to

help sell items from storage units had become "more limited," because he can only

move "little boxes and stuff like that," not larger items, and cannot frequently bend

over.  (A.R. 46-47.)  He also testified that before his heart attack he could lift

twenty-to-thirty-pound boxes, but now can only lift between five to ten pounds.

(A.R. 75.)  Dr. Grecco's note that Crowley had been moving furniture does not

contradict Crowley's testimony that he went to the hospital due to chest pain after

he tried to move end tables.  Further, this episode certainly does not discredit

Crowley's subjective limitations due to his cardiovascular impairment.  The fact

that he was required to go to the emergency department and was admitted to the

hospital confirms that the activity was beyond his limitations.  Again, this record

does not provide a clear and convincing reason to discredit Crowley's subjective

limitations or discount objective medical findings.

Aside from Dr. Grecco's note, the ALJ appears to cherry-pick from other records to support discounting Crowley's testimony, which is error. *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016) ("An ALJ cannot simply pick out a few isolated instances of improvement over a period of months or years but must interpret reports of improvement . . . with an understanding of the patient's overall well-being and the nature of her symptoms.") (internal quotations and citations omitted).

For example, the ALJ acknowledges Crowley's history of cerebral palsy affecting his left upper extremity. (A.R. 23-24.) She found, however, that other providers—again Dr. Grecco and ED physician, Dr. Guerico—recorded normal strength and normal range of motion "of the musculoskeletal system." (A.R. 24.) But the records the ALJ points to do not involve evaluations of Crowley's left upper extremity; both relate to hospital evaluations for sudden onset of chest pain. The ALJ also points to treating physician, Dr. Ward, who the ALJ said, "found the claimant to have functional left upper extremity strength." (A.R. 24.) This statement was not from Dr. Ward, but from another provider, Dr. Schabacker. (*See* A.R. 24, 674, 703, 708, 713.) Additionally, Dr. Schabacker's record on this limitation actually states "[c]oordination using the left upper extremity is restricted although he does have functional strength in the left upper extremity." (A.R. 674.) Dr. Schabacker does not explain what "functional strength" may be; nor does the

14

ALJ explain how she interprets this finding or how this may in any way contradict Crowley's testimony.  The record from Dr. Ward that is cited by the ALJ provides, "[g]rade 5 minus shoulder abduction grip strength."  (A.R. 743.)  For one, it is not clear to the Court that this finding refers to the left upper extremity or how it contradicts Crowley's testimony.  Further, Dr. Ward's additional records clearly document problems with Crowley's left arm.  (*See* A.R. 466 ("Coordination in the left arm is much less than that on the right. He can oppose fingers with him [sic] but has difficulty with precise motion.").)

As another example, the ALJ cites medical records that support Crowley's back limitations, but also states "most" findings do not support his impairment. (A.R. 24-25.)  The ALJ cites to records from PA Moore, who saw Crowley regarding his back issues.  (A.R. 25.)  The ALJ notes that "Mrs. Moore found [Crowley] to have good motor strength of the bilateral lower extremities" and "also noted that [Crowley] was able to rise from a seated position with minimal use of his arms and rise on his toes without any apparent weakness."  (*Id.*)  But this statement excludes Moore's documentation that "[o]nce upright [Crowley] appears stiff with [antalgic] gait," his "[a]mbulation is guarded, limp favoring left leg with short steps," and his "left foot remains closer to the ground on the right when standing on his heels."  (A.R. 781.)  The ALJ also noted that Dr. Schabacker found Crowley had normal range of motion in his neck, no muscle atrophy, and no

15

Babinksi's sign.  (A.R. 25, 708.)  During this same examination, however, Dr. Schabacker also opined that Crowley "is able to go from a seated to a standing position all though [sic] [he] finds it hard to stand fully erect," "[h]e is unable to extend his lumbar spine beyond neutral," and "[f]lexion is to approximately 30 [degrees] of the lumbar spine."  (A.R. 708.)

Similarly, with respect to his heart condition, the ALJ acknowledges that Crowley had a myocardial infarction in October 2018, and that he was treated with a stent placement, left heart catheterization, and balloon angioplasty.  (A.R. 26.) The ALJ also acknowledges that Crowley has cardiac abnormalities on testing and has been hospitalized since his MI with chest pain.  (*Id.*)  Yet, the ALJ cites to medical notes that state he had a normal heart rate and rhythm without murmur on examination.  (A.R. 830, 841.)  But no one has suggested that Crowley has chronic arrythmia.  The fact that he had a normal heart rate and rhythm on a particular examination does not contradict Crowley's testimony that he had an MI, that he has subsequently been hospitalized for his heart condition, and that he is physically limited by that condition.  The record appears to be undisputed on this issue.

The ALJ also acknowledges that Crowley underwent right shoulder and bicep surgery in December 2016, but then cites records where he had good range of motion and strength in his shoulder.  (A.R. 25.)  For example, she cites to a record from Dr. Cahill that he had normal strength of the right upper extremity.

(*Id.*)  But Crowley's complaint with respect to the right upper extremity pertains to his use of his right hand following surgery.  (A.R. 45.)  He testified that he is unable to grip and hold items with his hand and often drops things.  (A.R. 61-66.)  This was the focus of Dr. Cahill's examination cited by the ALJ.  Dr. Cahill completed a nerve conduction study of the right upper extremity which was "an abnormal study," showing moderately severe carpal tunnel syndrome on the right side, thus bolstering, not discrediting, Crowley right hand symptoms.  (A.R. 855-59.)

The ALJ also cites a number of different daily activities which she found were inconsistent with Crowley's stated limitations.  (A.R. 24.)  But the ALJ did not consider those activities as actually performed by Crowley, which were all done on a limited, diminished basis.

For the foregoing reasons, the Court finds the ALJ's decision to discredit Crowley's testimony was not based on substantial evidence, and her findings are insufficient to allow the Court to find she "did not arbitrarily discredit claimant's testimony." *Turner*, 613 F.3d at 1224 n.3.  The ALJ did not identify what testimony was not credible and what evidence undermines Crowley's complaints.  Therefore, the Court finds that the ALJ's credibility finding is unsupported by specific, clear and convincing reasons.

17

### B.    The ALJ's Evaluation of Medical Opinion Evidence

Crowley contends that the ALJ failed to give proper weight to the opinion of his treating physician, Dr. Ward.  (Doc. 15 at 22.)  The Commissioner counters that the ALJ properly considered the medical evidence.  (Doc. 17 at 5.)

In assessing a disability claim, an ALJ may rely on "opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester*, 81 F.3d at 830.  The Commissioner applies a hierarchy of deference to these three types of opinions.  The opinion of a treating doctor is generally entitled to the greatest weight.  *Id*.  "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician."  *Id.*

"The opinion of a treating physician is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'"  *Morgan v. Comm'r of the Soc. Sec. Admin*., 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)).  "However, the opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability."  *Id*.  *See also Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it

is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.").

If the treating physician's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques, or is inconsistent with other substantial evidence in the record, it is not entitled to controlling weight. *Orn v. Astrue*, 495 F.3d 625, 631-32 (9th Cir. 2007) (quoting Social Security Ruling 96-2p).  In that event, the ALJ must consider the factors listed in 20 C.F.R. § 404.1527(c) to determine what weight to accord the opinion.[2]  *See* Social Security Ruling 96-2p (stating that a finding that a treating physician's opinion is not well supported or inconsistent with other substantial evidence in the record "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected.  Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527.").  The factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with

---

[2] Crowley's DIB claim was filed before March 27, 2017, and his SSI claim was filed after March 27, 2017.  (A.R. 17.)  Therefore, the rules in 20 C.F.R. § 404.1527 apply.  *See Hearings, Appeals, and Litigation Law Manual (HALLEX)*, I-5-3-30-IV(B), Social Security Administration Office of Disability Adjudication and Review (Aug. 25, 2021), https://www.ssa.gov/OP_Home/hallex/I-05/I-5-3-30.html.

the record as a whole; (5) the specialization of the treating source; and (6) any other factors brought to the ALJ's attention that tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c)(2)(i)-(ii), (c)(3)-(6).

Opinions of treating and examining physicians may only be rejected under certain circumstances.  *Lester*, 81 F.3d at 830.  To discount an uncontradicted opinion of a treating or examining physician, the ALJ must provide "'clear and convincing' reasons."  *Id.* (internal citation omitted).  To discount the controverted opinion of either, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record."  *Id.* (internal citation omitted).  *See also Molina*, 674 F.3d at 1111; *Reddick*, 157 F.3d at 725.  The ALJ can accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  "The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct."  *Reddick*, 157 F.3d at 725.

Crowley argues the ALJ failed to give proper weight to the medical opinions of Dr. Ward and failed to identify clear and convincing reasons to discount his opinions.  (Doc. 15 at 22, 26.)

Dr. Ward's opinions are contradicted by consultative physicians, Dr. Spoor and Dr. Rabelo's opinions. Therefore, the ALJ must provide "specific and legitimate reasons supported by substantial evidence in the record" to reject Dr. Ward's opinion. Again, the Court finds the ALJ failed to do so.

In her decision, the ALJ provided Dr. Ward's opinion "minimal weight." (A.R. 28.) First, the ALJ found that Dr. Ward's opinions were not supported by his physical examination notes. (*Id.*) She discredits Dr. Ward's note on April 10, 2018, that Crowley has difficulty walking more than approximately 100 feet,[3] and that he would need a cane for longer distances. The ALJ stated this opinion is inconsistent with Dr. Ward's findings between June 2017 and April 2018, where Dr. Ward purportedly found Crowley "to have a normal musculoskeletal and neurological systems with normal gait and station with normal lower extremity motor strength." (A.R. 28.) This is simply an incorrect characterization of Dr. Ward's findings.

Dr. Ward diagnosed Crowley with lumbosacral spondylosis with radiculopathy in May 2017. He noted on May 4, 2017, that his gait was steady, "but clearly there is some imprecision in the left leg compared to the right." (A.R. 466.) He treated Crowley with a L4-5 transforaminal epidural steroid injection on

---

[3] It should be noted that on Dr. Ward's medical source statement, he provided an opinion that Crowley could walk for one hour in an eight-hour day. (A.R. 624.)

May 7, 2017, but Crowley continued to have ongoing pain when seen for follow-up on May 23, 2017.  (A.R. 451, 458.)  When he was seen by Dr. Ward again on June 28, 2017, Crowley reported no relief from the epidural steroid injection, and continuing neck, back and leg pain.  (A.R. 737.)  At that time, Dr. Ward filled out a handicapped sticker application for Crowley.  (*Id.*)  He felt Crowley's condition was "worsening," and he did "not have any doubt that his pain problems are legitimate."  (A.R. 740.)  Dr. Ward saw him again on July 18, 2017, and diagnosed him with chronic back and neck pain.  He also commented that Crowley would not be able to pursue any of his previous occupations, which included "oilfield and construction" work, and he referred him for chronic pain management.  (A.R. 744.)  When he saw him again for an examination in April 2018, Dr. Ward said it was "a matter of remarkable perseverance that he has been able to work this long."  (A.R. 761.)  Therefore, contrary to the ALJ's findings, Dr. Ward certainly did not find Crowley to have normal musculoskeletal and neurological systems between June 2017 and April 2018.

Second, the ALJ found Dr. Ward's opinions in his Medical Source Statement ("MSS") to be "vague and conclusory without specifying as to why the claimant would only be limited to 'sit/stand at will' or give an explanation of the claimant's reaching and manipulative limitations."  (A.R. 28.)  Dr. Ward was provided with the Commissioner's own check-box form for his MSS.  On the

check-box form, Dr. Ward opined Crowley could sit for eight hours, stand for two hours, and walk for one hour in an eight-hour workday. (A.R. 624.) Under these boxes, the MSS asks: "[i]f the total time for sitting, standing and walking does not equal or exceed 8 hours, what activity is the individual performing for the rest of the 8 hours?" (*Id.*) Although the boxes checked for these activities do exceed eight hours, Dr. Ward added: "needs to be able to sit/stand at will." (*Id.*) Under postural activities, Dr. Ward also simply noted "balance problems" and "back pain" as clinical findings supporting his assessment. (A.R. 626.) It is improper to reject a physician's opinion merely for being expressed on a check-off report. *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017). But the Ninth Circuit has recognized that a check-the-box opinion could be rejected where it lacked a required explanation, and the opinion was contradicted by the record. *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020).

Here, although the explanations Dr. Ward provided on the MSS are minimal, his opinions are clearly not contradicted by the record. Dr. Ward treated Crowley predominantly for his back and neck issues. As discussed above, throughout his records Dr. Ward notes cervical spine tenderness and decreased range of motion; lumbar spine tenderness; and difficulty bending, reaching, and stooping due to neck and back pain. (*See* A.R. 739, 741, 743.) Dr. Ward also discussed Crowley's treatment plans, supervised his pain management, and considered surgical

23

intervention. (A.R. 454, 744, 767.) He also treated Crowley with injection therapy. (*See* A.R. 451 (follow-up after right L4-5 transforaminal epidural steroid injection); 737 (noting continued pain, even after injections, in his lumbar spine, neck, and leg); 776 (performed fluoroscopically guided L4-5 interlaminar epidural steroid injection); 784 (performed fluoroscopically guided right paramedian C5-6 interlaminar epidural steroid injection).) Given Crowley's extended history of serious, chronic back and neck pain, the limitation that he be able to stand or sit at will is hardly novel, and is entirely consistent with Dr. Ward's management of his condition.

Third, the ALJ found Dr. Ward's opinion was inconsistent with Crowley's activities of daily living and returns, once again, to Dr. Grecco's note regarding moving furniture. (A.R. 28.) As discussed above, however, relying on this statement to discredit Crowley's testimony was not based on substantial evidence.

Last, the ALJ afforded Dr. Ward's opinion minimal weight because his opinion that Crowley could not perform past relevant work is an issue reserved for the Commissioner. The ALJ is correct that the Commissioner is not bound by the opinion of a treating physician on the ultimate issue of disability. *See* SSR 06-03p, 71 Fed. Reg. 45593-03, at 45596, 2006 WL 2263437 (Aug. 9, 2006). At the same time, the Ninth Circuit has made clear that the ALJ cannot simply reject a treating physician's assessment, based on medical evidence, of the likelihood of being able

to sustain full time employment. *Hill v. Astrue,* 698 F.3d 1153, 1160 (9th Cir. 2012). The ALJ did not provide a citation with this finding, but from the Court's review, Dr. Ward opined that Crowley "would not be able to continue working in his previous occupations, which include oilfield and construction" due to his various medical impairments. (A.R. 744.) This is not an opinion that Crowley was "disabled" or "unable to work." That is Dr. Ward's medical opinion, not a "finding reserved to the Commissioner." The ALJ must provide "specific and legitimate reasons supported by substantial evidence in the record" in order to reject those opinions. *Molina*, 674 F.3d at 1111.

Additionally, the ALJ did not consider any of the factors listed in 20 C.F.R. § 404.1527(c). The ALJ's only mention of the treatment relationship between Crowley and Dr. Ward is the single reference to Dr. Ward as "a treating source." (A.R. 28.) The ALJ did not reference 20 C.F.R. § 404.1527, or the factors to be considered therein. The ALJ therefore did not consider the length of the treatment relationship, the frequency of examination, the extent of the treatment relationship, or the consistency of the opinion with the record as a whole. § 404.1527(c)(2)(i)-(ii), (c)(3)-(6). The Ninth Circuit has determined such a failure "alone constitutes reversible legal error." *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017).

Accordingly, the Court finds the ALJ failed to provide specific and legitimate reasons supported by substantial evidence in the record for discounting Dr. Ward's opinions regarding Crowley's limitations.

### C.      Vocational Expert's Hypothetical

Last, Crowley argues the ALJ failed to incorporate all his impairments and limitations into the hypothetical questions posed to the vocational expert.  (Doc. 15 at 30-31.) Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).  "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'" *Magallanes*, 881 F.2d at 756 (quoting *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982)).  If the assumptions in the hypothetical are not supported by the record, then the vocational expert's opinion that the claimant has a residual working capacity has no evidentiary value.  *Embrey*, 849 F.2d at 422.

Crowley argues that the hypothetical the ALJ relied on to find he could perform work was deficient because it did not incorporate all of his limitations.  As discussed above, the Court has determined the ALJ failed to properly consider the treating physician's opinions, and failed to adequately support her credibility finding.  Accordingly, these errors may have infected the hypothetical the ALJ relied on, and in turn, the ALJ's determination that Crowley could perform work.

The Court, therefore, finds the ALJ's determination at step five is not supported by substantial evidence.

## V.    Remand or Reversal

Crowley asks the Court to remand this case for proper consideration of all of his impairments, his credibility, the medical evidence, and vocational evidence, or alternatively for a remand for an award of benefits.  (Doc. 23 at 34.)  "[T]he decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court."  *Reddick*, 157 F.3d at 728.  If the ALJ's decision "is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'"  *Hill*, 698 F.3d at 1162 (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)).  "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded.  Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate."  *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

The Court finds remand for further proceedings is appropriate.  On remand, the ALJ shall reconsider Crowley's subjective symptom testimony, properly evaluate the opinions of Dr. Ward, and reconsider whether Crowley can perform

work in the national economy based upon a hypothetical that incorporates all of his

impairments and limitations supported by the record.

## VI.   Conclusion

Based on the foregoing, **IT IS ORDERED** that the Commissioner's

decision be **REVERSED** and this matter be **REMANDED** pursuant to sentence

four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED this 28th day of March, 2022.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge